# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# 2:12cv77

| | |
|---|---|
| RICK L. HODGES and ) <br> CORNERSTONE HOMES OF ) <br> HIGHLANDS, LLC, ) <br>   ) <br>    Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> LEO A. McKEOUGH COMPANY, ) <br> LLC, d/b/a LEO MCKEOUGH & CO, ) <br> and LEO McKEOUGH JR., ) <br>   ) <br>    Defendants. ) <br> _____ ) | **MEMORANDUM AND RECOMMENDATION** |

Pending before the Court is Defendant Leo McKeough Jr.'s Motion to Dismiss [# 8]. Plaintiff brought this action against Defendants asserting claims for professional negligence and fraud arising out of the actions of Defendant McKeough.[1] Defendant McKeough moves to dismiss the claims asserted against him pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Defendant McKeough contends that the Court lacks personal jurisdiction over him as a non-resident. Upon a review of the pleadings and the relevant legal authority, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 8].

---

1 The Court assumes that Plaintiffs intend to assert both a negligence and fraud claim against Defendant McKeough Jr. because the Complaint fails to separately set forth the causes of action asserted against Defendants.

-1-

## I. Factual Background

Plaintiff Hodges is a resident of Mississippi. (Pl.'s Compl. ¶ 1.) Plaintiff Hodges and Gregory Fuselier formed Plaintiff Cornerstone Homes of Highlands, LLC ("Cornerstone") in 2003 in order to develop commercial and residential property in Western North Carolina. (Id. ¶ 11.) Plaintiff Cornerstone's principal place of business is Highlands, North Carolina. (Id. ¶ 2.) Plaintiff Hodges and Fuselier jointly operated Plaintiff Cornerstone until 2009, when Fuselier transferred his interest in the company to Plaintiff Hodges. (Id. ¶ 12.)

Defendant McKeough is a citizen and resident of Louisiana who provides accounting services. (Id. ¶¶ 4, 13.) Defendant Leo A. McKeough Company, LLC ("McKeough Company") is a Louisiana limited liability company with its principal place of business in Metairie, Louisiana. (Id. ¶3.) Defendant McKeough is the registered agent, sole member, and an employee of Defendant McKeough Company. (Id. ¶ 5.)

While Plaintiff Hodges and Fuselier jointly operated Plaintiff Cornerstone, Fuselier recommended that Plaintiff Hodges hire Defendant McKeough to perform accounting and bookkeeping services for Plaintiff Cornerstone. (Id. ¶ 13.) Subsequently, Plaintiff Hodges agreed to hire Defendant McKeough. (Id.) After being hired, Defendant McKeough performed various accounting, tax, and

bookkeeping services for Plaintiff Cornerstone, including: monitoring disbursements from and deposits to Plaintiff Cornerstone's bank accounts in connection with construction projects in Western North Carolina, preparing financial statements, preparing profit and loss reports, preparing tax returns, and tracking receipts and expenditures. (Id. ¶¶ 11, 15, 33.) In order to perform these tasks, Plaintiffs granted Defendant McKeough access to Plaintiff Cornerstone's bank accounts. (Id.)

Without the knowledge of Plaintiff Hodges, Fuselier opened accounts and took out loans and lines of credit in Plaintiff's name in order to fund the operations of Plaintiff Cornerstone. (Id. ¶ 17.) In August of 2007 Fuselier opened a checking account on behalf of Plaintiff Cornerstone by falsely representing to the bank that he was the sole member of Plaintiff Cornerstone. (Id. ¶ 20.) Once he opened this account, Fuselier began diverting payments from customers of Cornerstone to this account and writing checks from the account to make payments on the debt obligations that he had improperly taken out. (Id.) Defendant McKeough had knowledge of these accounts and personally monitored these accounts. (Id. ¶¶ 17, 21.)

Starting in late 2007, Plaintiff Cornerstone began encountering financial irregularities. (Id. ¶ 18.) For example, Fuselier began writing dozens of checks on

the accounts of Plaintiff Cornerstone despite the fact that the account contained insufficient funds to cover the checks. (Id.) Even though Defendant McKeough received the bank statements and was aware of these irregularities, Defendant McKeough failed to inform Plaintiff Hodges. (Id. ¶¶ 19, 21.)

In 2008, Plaintiff Hodges discovered that Fuselier had been diverting the income and assets of Plaintiff Cornerstone for Fuselier's personal use. (Id. ¶¶ 22-23.) After this discovery, Plaintiff Hodges opened up an account with access and use restricted to himself. (Id. ¶ 24.) Plaintiff Hodges directed Defendant McKeough to receive the bank statements for this account and monitor the account. (Id ¶ 25.)

Fuselier, however, discovered that if he wrote a check on other Cornerstone accounts held at the same bank as the account Plaintiff Hodges opened in 2008, that the bank would cover these checks by automatically transferring funds from the account Plaintiff Hodges had opened. (Id. ¶ 27.) Through this process, Fuselier diverted over $700,000.000 from the account. (Id.) Despite the fact that this misappropriation was apparent on the bank statements for the accounts, Defendant McKeough failed to advise or alert Plaintiff Hodges to these irregularities. (Id. ¶¶ 27-29.)

In addition to these accounting irregularities, Fuselier, without the

knowledge of Plaintiff Hodges, was paying bribes and kick-backs to various individuals. (Id. ¶ 30.) These payments were made from accounts that Defendant McKeough was monitoring. (Id.) At some point, Defendant McKeough traveled to North Carolina to assist in an audit of Plaintiff Cornerstone's financial records to determine whether such payments were possible. (Id. ¶ 30.)

Finally, Plaintiffs discovered in 2010 that Fuselier had also made payments totaling over $200,000.00 to Defendant McKeough in 2006 through 2008. (Id. ¶ 34.) These payments were in excess of reasonable compensation for the accounting services Defendant McKeough performed for Plaintiff Cornerstone. (Id.) Plaintiffs contend that Fuselier and Defendant McKeough conspired to divert the assets of Plaintiff Cornerstone to Defendant McKeough and Fuselier in a manner that would be hidden from Plaintiff Hodges. (Id. ¶ 35.) Plaintiff further alleges that Defendant McKeough actively concealed this activity. (Id.)

Although not entirely clear from the Complaint, it appears that Plaintiffs assert claims for fraud and professional negligence against Defendant McKeough. Defendant McKeough moves to dismiss the claims asserted against him pursuant to Rule 12(b)(2). Defendant McKeough's motion is now before the Court for a Memorandum and Recommendation to the District Court.

## II. Analysis

A plaintiff bears the burden of proving that the Court has personal jurisdiction over a defendant by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). Courts are provided flexibility in how the address a motion to dismiss for lack of personal jurisdiction. For example, a Court may rule on the motion based on the pleadings, hold an evidentiary hearing, or allow jurisdictional discovery prior to ruling on the motion. See Marx Indus., Inc. v. Chestnut Ridge Foam, Inc., No. 5:11cv139-RLV, 2012 WL 4888322 (W.D.N.C. Oct. 12, 2012) (Voorhees, J.) However, when the District Court rules on a defendant's Rule 12(b)(2) motion to dismiss without an evidentiary hearing, a plaintiff need only set forth a prima facie case that the Court has personal jurisdiction over the defendant. Id.; Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). In determining whether a plaintiff has made this prima facie showing, the Court construes the allegations in the complaint in the light most favorable to the plaintiff and must resolve all factual disputes in favor of the plaintiff. New Wellington, 416 F.3d at 294; Mylan Labs., 2 F.3d at 60.

In order to determine whether Plaintiff has satisfied its burden, the Court must engage in a two-step analysis. Ellicott Mach. Corp ., Inc. v. John Holland

Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993); Vishay Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1064 (4th Cir.1982). First, the Court must determine whether the exercise of jurisdiction over a nonresident defendant is authorized by North Carolina's long-arm statute. New Wellington, 416 F.3d at 294; Ellicott Mach., 995 F.2d at 477. Second, the Court considers whether the exercise of jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. New Wellington, 416 F.3d at 294; Ellicott Mach., 995 F.2d at 477. Because the North Carolina Supreme Court has interpreted the state's long-arm statute to reach the constitutional limits of due process, Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630-31 (N.C.1977), courts have compressed this two-step inquiry into a single inquiry, see CEM Corp. v. Personal Chemistry, 55 F. App'x 621, 623 (4th Cir. 2003) (unpublished); Gen. Latex & Chem. Corp. v. Phoenix Med. Tech., Inc. 765 F. Supp. 1246, 1249 n. 1 (W.D.N.C.1991) (Potter, J.); Shinn v. Greeness, 218 F.R.D. 478, 481 (M.D.N.C.2003).

Personal jurisdiction may either be specific or general. ALS Scan Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002). Where a defendant's contacts with the forum state also provide the basis for the suit against the defendant, the contacts may establish specific jurisdiction. Id.; Carefirst of Md,

Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003). "In determining whether specific jurisdiction exists, we consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be considered reasonable." Carefirst, 334 F.3d at 397 (internal quotation and citation omitted). In contrast, where a defendant's contacts with the forum state are not also the basis of the claims, then jurisdiction over the defendant must constitute general jurisdiction. Id. "To establish general jurisdiction, the defendant's activities in the state must have been continuous and systematic." Id. (internal quotations and citation omitted.) Here, Plaintiffs contend that the Court has specific jurisdiction over Defendant McKeough.

As a threshold matter, the Court notes that Defendant McKeough has not come forward with any affidavits or other evidence to contradict the contention in the Complaint that the Court has personal jurisdiction over him. Accordingly, this Court has based its Memorandum and Recommendation entirely on the allegations contained in the Complaint. Here, the Complaint contains ample allegations setting forth a prima facie case that the Court has personal jurisdiction over the Defendant.

The Complaint alleges that Defendant McKeough was personally conducting business in the State of North Carolina over the course of several years by offering accounting services to Defendant Cornerstone, a North Carolina Company engaged in developing commercial and residential property in Western North Carolina. (Pl.'s Compl. ¶¶ 9, 11, 15, 17, 19, 21, 25.) Defendant McKeough monitored the disbursements from Plaintiff Cornerstone's accounts in connection with the development of property in North Carolina, prepared financial statements for Plaintiff Cornerstone and tracked Plaintiff Cornerstone's receipts and expenditures. (Id. ¶¶ 11, 15.) As part of his role of providing accounting services to Plaintiff Cornerstone, Defendant McKeough traveled to North Carolina on at least one occasion to audit the company's financial records. (Id. ¶ 31.) The purpose of this audit was to determine whether Fuselier had made improper payments from the accounts of Plaintiff Cornerstone. (Id.)

Such factual allegations provide a basis for finding personal jurisdiction over Defendant McKeough as he purposefully availed himself of the privilege of conducting activities in the State of North Carolina by personally engaging in a course of business in North Carolina over several years. Based on his activities and contacts with North Carolina, Defendant McKeough could reasonably anticipate being haled into Court in North Carolina from claims stemming from

these contacts.  Moreover, Defendant McKeough's contacts and activities in North Carolina give rise to the claims against Defendant McKeough.  Finally, exercising personal jurisdiction over Defendant McKeough is reasonable based on the facts of this case.

Finally, Defendant McKeough's contention that the Court lacks personal jurisdiction over him because the allegations in the Complaint fail to allege that he took these actions in his individual capacity is without merit.   Here, the Complaint alleges that Defendant McKeough personally took the actions at issue.  This is not a case where the Complaint attempts to establish personal jurisdiction over an individual by virtue of the activities of a valid corporation operating in North Carolina.  See e.g. Smith v. Dade Behring Holdings, Inc., No. 1:05CV86,  2007 WL 152119 (W.D.N.C. Jan. 16, 2007) (Thornburg, J.); Springs v. Ally Fin., Inc., 3:10-CV-311-RJC-DCK, 2010 WL 4818669 (W.D.N.C. Oct. 14, 2010) (Keesler, Mag. J.).   Because Plaintiffs have met their burden of setting forth a prima facie case of jurisdiction over Defendant McKeough, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 8].

## III. Conclusion

The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 8].

Signed: July 3, 2013

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).